**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

ALISA MULLAJ and DONALD MULLAJ,

       Petitioners,

v.                                      Case No. 12-14309

JANET NAPOLITANO, Secretary of Homeland
Security, et al.,

       Respondents.
                                             /

**OPINION AND ORDER GRANTING RESPONDENTS' MOTION TO DISMISS
AND TERMINATING AS MOOT PETITIONERS' SECOND MOTION FOR
PRELIMINARY INJUNCTION**

In this action brought by Petitioners Alisa Mullaj, a U.S. citizen, and her husbnad Donald Mullaj, Petitioners allege that Respondents, various U.S. officials, have violated immigration regulations in processing Petitioners' application. Petitioners bring a claim under the Administrative Procedures Act ("APA") and another claim alleging a violation of their substantive due process rights. After Petitioners brought motions for "emergency" injunctive relief, Respondents moved to dismiss the action for lack of subject matter jurisdiction and failure to state a claim.[1] The matter is fully briefed and after consideration of the briefs, the court concludes a hearing would not aid in its determination. See E.D. Mich. 7.1(f)(2). As the court's jurisdiction must be determined before addressing any other issues, the court will look first to the jurisdictional arguments, conclude that jurisdiction is lacking, and grant the motion to dismiss on that

---

[1]Petitioners withdrew their first emergency motion in order to file an amended complaint. Petitioners then brought a second emergency motion and Respondents filed a motion to dismiss.

basis as well as for failure to state a claim.  Petitioner's second motion for preliminary injunction will be terminated as moot.

## I.  BACKGROUND

On or around August 12, 2005, Donald Mullaj married Natasha Carr, a U.S. citizen. (Am. Compl. Ex. C.)  Carr filed a I-130 petition for his benefit on October 26, 2005. (*Id.*)  In May 2006, Carr and Mullaj were interviewed individually by the U.S. Citizenship and Immigration Services ("USCIS") and, according to the USCIS, gave conflicting answers to numerous questions on various topics.  The USCIS sent Carr a "Notice of Intent to Deny" letter ("NOID"), describing the most significant discrepancies and giving Carr an opportunity to submit additional evidence in support of the 2005 Petition. (*Id.*)  Carr did not respond.  At some point thereafter, the USCIS received a divorce decree, dated February 22, 2008, terminating the marriage between Mullaj and Carr.  On April 23, 2009, the USCIS issued its final decision, denying the 2005 Petition on the ground that Carr and Mullaj had a "sham marriage which was entered into solely for the purpose of allowing Mr. Mullaj to evade the immigration laws and obtain immigration benefits." (*Id.* at 3.)  Carr did not appeal this decision.

Petitioners Alisa Mullaj and Donald Mullaj were married on May 27, 2011.  In or around September 2011, Alisa Mullaj ("Alisa") filed a Form I-130 Petition for Alien Relative ("the 2011 Petition") on behalf of her husband Donald Mullaj ("Donald"), an Albanian citizen.  The USCIS ssued several "Notice[s] of Intent to Deny" ("NOID"), citing as a basis for the denial Donald's ex-wife's alleged fraud in the 2005 Petition filed for his benefit. The Mullajs then requested documents relating to the USCIS's denial of the 2005 Petition, and the USCIS provided the NOID and the April 2009 denial of the 2005

Petition, which included a summary of the reasons for its denial, including the pertinent conflicting statements and the finding of a sham marriage. (*See* Am. Compl. Ex. C.) Petitioners filed this lawsuit, alleging that Respondents were required to provide additional information, beyond a mere summary.

## II. STANDARD

"Where subject matter jurisdiction is challenged pursuant to Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Moir v. Greater Cleveland Regional Transit Authority*, 895 F.2d 266, 269 (6th Cir. 1990).

Additionally, Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." To survive a motion under Rule 12(b)(6), a complaint must plead sufficient specific factual allegations, and not just legal conclusions, in support of each claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–679, (2009). A complaint will be dismissed unless, when all well-pled factual allegations are accepted as true, the complaint states a "plausible claim for relief." *Id.* at 679. In considering a motion to dismiss, the court may consider the entire complaint, documents incorporated by reference in the complaint and central to the claims, and matters on which a court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). When multiple motions are brought under Rule 12, courts are "bound to consider the 12(b)(1) motion first, since the Rule 12(b)(6) challenge becomes moot if this court lacks subject matter jurisdiction." *Moir*, 895 F.2d at 269 (citing *Bell v. Hood*, 327 U.S. 678, 682 (1946)).

### III. DISCUSSION

The Immigration and Nationality Act ("INA") provides that U.S. citizens may file an I-130 petition for classification of their alien spouse as "immediate relative status." 8. U.S.C. § 1154. The petitioner bears the burden for proving eligibility for this benefit, 8 U.S.C. § 1361, and approval of the petition does not vest any right on the petitioner. *Tongatapu Woodcraft Hawaii, Ltd. v. Feldman,* 736 F.2d 1305, 1308 (9th Cir. 1984); *see also Bangura v. Hansen*, 434 F.3d 487, 496 n. 2 (6th Cir. 2006). Instead, "approval of that petition merely renders the alien spouse eligible for immigrant status." *Foul v. Mukasey*, 256 F. App'x 785, 790 (6th Cir. 2007) (citation omitted).

If an alien has previously been deemed to have engaged in marriage fraud in order to evade immigration laws, the alien is prohibited from having a subsequent visa petition approved:

> Notwithstanding the provisions of subsection (b) of this section no petition shall be approved if (1) the alien has previously been accorded, or has sought to be accorded, an immediate relative or preference status as the spouse of a citizen of the United States or the spouse of an alien lawfully admitted for permanent residence, by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws, or (2) the Attorney General has determined that the alien has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws.

8 U.S.C. § 1154(c). Thus, if an alien is involved in marriage fraud, he is foreclosed from a subsequent grant of a visa petition. *Ghaly v. I.N.S.,* 48 F.3d 1426, 1435-36 (7th Cir. 1995) (Posner, J., concurring) ("If an alien attempts or conspires to enter into a marriage for the purpose of evading the immigration laws, he is ineligible for an immigrant visa. 8 U.S.C. § 1154(c)(2). This means that he can never become a citizen of the United States or even reside permanently in this country. It does not matter whether he used

the marriage to obtain a visa; Ghaly did not. It is enough that he married-or even just attempted or conspired to marry-with the forbidden purpose."). The applicable regulations promulgated in connection with this prohibition provide:

> (ii) Fraudulent marriage prohibition. Section 204(c) of the Act prohibits the approval of a visa petition filed on behalf of an alien who has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws. The director will deny a petition for immigrant visa classification filed on behalf of any alien for whom there is substantial and probative evidence of such an attempt or conspiracy, regardless of whether that alien received a benefit through the attempt or conspiracy. Although it is not necessary that the alien have been convicted of, or even prosecuted for, the attempt or conspiracy, the evidence of the attempt or conspiracy must be contained in the alien's file.

8 C.F.R. § 204.2(a)(1)(ii).

## A. The Administrative Procedures Act

Petitioners first assert a claim under the APA, which provides judicial review for "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704. In order to provide finality, for review, two conditions must be satisfied to invoke jurisdiction under the APA:

> First, the action must mark the "consummation" of the agency's decisionmaking process, *Chicago & Southern Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 113, 68 S.Ct. 431, 437, 92 L.Ed. 568 (1948)-it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which "rights or obligations have been determined," or from which "legal consequences will flow," *Port of Boston Marine Terminal Assn. v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 71, 91 S.Ct. 203, 209, 27 L.Ed.2d 203 (1970).

*Bennett v. Spear*, 520 U.S. 154, 177-178 (1997). Respondents assert, and the court agrees, that the court lacks jurisdiction to review the specific agency action challenged by Petitioners because it is not a "final" decision, neither marking the consummation of

5

the agency's decision-making process nor conclusively determining any rights or obligations.

Importantly, Petitioners are not challenging any decision to deny the 2011 Petition. Instead, they claim that Respondents have engaged in "wrongful administrative action," by "refus[ing] to release" certain documentation relating to the 2005 Petition. (Am. Compl. at ¶ 23.) Petitioners ask the court to "enjoin the Respondents from adjudicating Alisa's visa petition for Donald until such time as they have released the actual evidence upon which they intend to rely to deny said petition and have provided Alisa with a reasonable opportunity to rebut said evidence." (*Id.*, emphasis removed.) Thus, Petitioners base their APA cause of action, not on a final determination on the 2011 Petition, but on the intermediate procedural action–or alleged inaction–relating to how much information was provided after issuing the NOIDs. Petitioners contend this is "final" because Respondents have expressed "their clear intent not to release" any further evidence in connection with the 2005 Petition. (Resp. Br. at 6.) This argument, however, is a strained interpretation of the APA's finality requirement. There has been no "consummation" of the agency's decision-making process, nor is there any action or inaction "by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Bennett*, 520 U.S. at 177-78 (citations omitted). Rather, Petitioners challenge a quintessential interlocutory action, which is not yet reviewable by the court under the APA. 5 U.S.C. § 704 ("A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action.").

Petitioners attempt to analogize the facts of this case with *Bennett*, in that the USCIS has made its final decision not to release certain evidence to Petitioners, which is purportedly similar to the Fish and Wildlife Service's "Biological Opinion", challenged in *Bennett*, which gave the agency's final decision on a particular water project on certain species. 520 U.S. at 159-60. However, in *Bennett*, it was uncontested that the "Biological Opinion" constituted the "consummation of the agency's decision-making process, *id.* at 178, whereas here the decision regarding what materials to release is just one facet of the ultimate issue before the USCIS concerning whether to grant the 2011 Petition. Moreover, in *Bennett*, the "Biological Opinion" set forth a legal regime from which direct consequences flowed, meeting the second requirement of finality. *Id.* In this case there has been no such alteration of rights. The "Notice of Intent to Deny" is just that--a notice of *intent*--and the accompanying decisions regarding what material to release are similarly not final actions altering any legal regime.

Petitioners further argue that their APA claim is reviewable under § 706(1) or (2), which provides:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall--
>
> (1) compel agency action unlawfully withheld or unreasonably delayed; and
>
> (2) hold unlawful and set aside agency action, findings, and conclusions . . .

5 U.S.C. § 706(1)&(2). Even if Petitioners seek the relief set forth under these subsections, they must still identify reviewable action or inaction, which must be of the

type authorized under the APA. *See Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 61-62 (2004) ("Where no other statute provides a private right of action, the 'agency action' complained of must be 'final agency action.'"). They do not. The court does not have jurisdiction to review every action or inaction taken by an administrative agency. It is not this court's role or within this court's statutory authority to scrutinize intermediate steps taken as an agency works its way toward a final decision.

The court lacks jurisdiction to review intermediate agency determinations such as those complained of by Petitioners. The APA claim will be dismissed for lack of jurisdiction.[2]

### B. Substantive Due Process

Respondents next argue that Petitioners' substantive due process claim should be dismissed. The Due Process Clause provides "heightened protection against government interference with certain fundamental rights and liberty interests." *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997). "Government actions that burden the exercise of those fundamental rights or liberty interests are subject to strict scrutiny, and will be upheld only when they are narrowly tailored to a compelling governmental interest." *Seal v. Morgan*, 229 F.3d 567, 574 (6th Cir. 2000).

Petitioners assert that Respondents have violated their due process rights by failing to produce all of the underlying documents in the 2005 Petition, that is, by producing a summary of the pertinent discrepancies, rather than producing all the

---

[2]Alternatively, the claim could also be dismissed for failure to state a claim under the APA. Because the court views the issue as a jurisdictional question, the court will dismiss under Rule 12(b)(1), but the claim is also subject to dismissal under Rule 12(b)(6).

"evidence" on which Respondents intend to rely. However, as Respondents correctly point out, Petitioners are not entitled to more than a summary of the evidence, at this stage in the visa applications proceedings. Accordingly, taking as true all of Petitioners' well-pleaded facts, Petitioners fail to state a claim upon which to be granted, either for a due process violation or an APA violation.

The information which Respondents must provide in connection with a NOID is governed by 8 C.F.R. § 103.2, which states:

> (iv) Process. A request for evidence or notice of intent to deny will be communicated by regular or electronic mail and will specify the type of evidence required, and whether initial evidence or additional evidence is required, *or the bases for the proposed denial sufficient to give the applicant or petitioner adequate notice and sufficient information to respond*. The request for evidence or notice of intent to deny will indicate the deadline for response, but in no case shall the maximum response period provided in a request for evidence exceed twelve weeks, nor shall the maximum response time provided in a notice of intent to deny exceed thirty days. Additional time to respond to a request for evidence or notice of intent to deny may not be granted.

8 C.F.R. § 103.2(b)(8)(iv) (emphasis added). In this case, Respondents provided the bases for their denial--evidence of a previous sham marriage--along with the bases for their finding of a previous sham marriage. (Am. Compl. Ex. C.) Their actions complied with these regulations as a matter of law.

Petitioners cite 8 C.F.R. § 103.2(b)(16), which states that an "applicant or petitioner shall be permitted to inspect the record of proceeding which constitutes the basis for the decision . . ." Petitioners argue that this provision entitles them to inspect all of the evidence associated with the 2005 Petition, contending that "all that the Respondents will agree to provide to the Mullajs is a summary of a completely one-sided analysis of a prior visa interview–laying out only details from the interview that

might support the Respondents negative inferences, while providing no sense of how much countervailing testimony may have been provided during that interview that might actually support a finding that the marriage at issue was, in fact, entered in good faith by Donald and his ex-wife." (Resp. Br. at 11-12.) The problem with this argument is that Petitioners ignore the final clause of § 103.2(b)(16), providing that inspection shall be permitted "*except as provided in the following paragraphs.*" And, the first exception to inspection of the evidence applies in this case:

> (i) Derogatory information unknown to petitioner or applicant. If the decision will be adverse to the applicant or petitioner and is based on derogatory information considered by the Service and of which the applicant or petitioner is unaware, he/she shall be *advised of this fact and offered an opportunity to rebut the information and present information in his/her own behalf before the decision is rendered*, except as provided in paragraphs (b)(16)(ii), (iii), and (iv) of this section. Any explanation, rebuttal, or information presented by or in behalf of the applicant or petitioner shall be included in the record of proceeding.

8 C.F.R. § 103.2(b)(16)(i) (emphasis added). Thus, in preliminary inclinations, such as a "Notice of Intent to Deny," Respondents were not required to turn over all the evidence under the language of the regulation, but instead they needed to simply advise Petitioners of the derogatory information and give them a chance to rebut the information before issuing the final decision, which they unquestionably did.

Respondents have provided two unpublished decisions by the Board of Immigration Appeals ("BIA") which expressly hold that the USCIS need only advise the petitioner of the derogatory information, it need not turn over the documentary evidence of such. *See Matter of Liedtke*, No. A070 656 080, 2009 WL 5548116 (BIA Dec. 31, 2009) ("We find at the outset that the federal regulations at 8 C.F.R. § 103.2(b)(16)(i) only require that a petitioner be advised of the derogatory evidence of record; the

regulations do not place upon USCIS a requirement that the actual documents be provided to a petitioner in order to comply with due process."); *Matter of Firmery*, A75 419 573, 2006 WL 901430 (BIA Feb. 28, 2006) ("The respondent cites to 8 C.F.R. § 103.2(b)(16) to support her contention that the DHS must turn over such records to the respondent. However, our reading of the regulations confirms that an alien must only be 'advised' of the derogatory information which will be 'disclosed' to her and that she then be given an opportunity to rebut the evidence once the DHS has indicated an intent to deny the application."). Petitioners argue that these decisions are not designated "precedent decisions," and it is only through precedent decisions that the BIA fulfills its function to provide "clear and uniform guidance to the Service, the immigration judges, and the general public on the proper interpretation and administration of the Act and its implementing regulations." 8 C.F.R. § 1003.1(d)(1). Nonetheless, while these decisions may not be "precedent decisions," they are certainly persuasive, particularly given that they conform with the plain understanding of the regulations and given further that Petitioners have failed to cite any authority whatsoever in express support of their position.

      Respondents also cite a series of federal court cases which held that a summary was sufficient to satisfy the agency's responsibilities under the regulations. For example, in *Ogbolumani v. Napolitano*, 557 F.3d 729, 735 (7th Cir. 2009), the Seventh Circuit has addressed the plaintiffs argument that 8 C.F.R. § 103.2(b)(16)(I) required the USCIS to "exhaustively list all the evidence USCIS found." *Id.* The court stated, "This argument misses the mark, and by a lot. . . . . [T]he regulation does not require USCIS to provide, in painstaking detail, the evidence of fraud it finds." *Id.* Instead, the court

noted, "Our review is deferential, and nit-picking the exact characterization of the evidence would overstep our limited role." *Id.*

Likewise in *Ghaly v. I.N.S.,* 48 F.3d 1426, 1434 (7th Cir. 1995), the court found that "[t]he regulations do not mandate that [the petitioner] must be provided an opportunity to view each and every sworn statement. In this case, the INS provided a summary of the grounds sufficient in detail to explain its reasoning for the revocation of [the petitioenr's] visa petition." A Missouri district court relied on *Ghaly* and *Ogbolumani* to reject the argument which Petitioners are setting forth in this case:

> According to Plaintiff, USCIS was required to furnish to Plaintiff a copy of the USCIS interviewer notes and memo and the video recording of Henderson and Ms. Opoku–Agyeman's interviews with USCIS if the BIA wanted to rely on that evidence in its decision. (Doc. # 9, § III). Plaintiff misstates the law. Section 103.2 "does not require USCIS to provide, in painstaking detail, the evidence of fraud it finds." *Ogbolumani v. Napolitano*, 557 F.3d 729, 735 (7th Cir. 2009). Additionally, § 103.2 does not mandate Plaintiff "be provided an opportunity to view each and every sworn statement." *Ghaly v. I.N.S.*, 48 F.3d 1426, 1434 (7th Cir.1995). USCIS's Notice of Intent to Deny, sent before the Petition was denied, informed Plaintiff USCIS intended to deny his Petition because 1) Henderson and Ms. Opoku–Agyeman had numerous discrepancies in their USCIS interviews and 2) Henderson stated he married Ms. Opoku–Agyeman to give her an immigration benefit in his interview. (Notice of Intent to Deny, p. 2). The summarized information provided by USCIS in its Notice of Intent to Deny satisfied the requirements of § 103.2. *See Ghaly*, 48 F.3d at 1434 ("[A] summary of the grounds sufficient in detail to explain its reasoning for the" denial satisfies § 103.2).

*Opoku-Agyeman v. Perez*, No. 12–06006, 2012 WL 3590761, *6 (W.D. Mo. July 24, 2012).

Petitioners attempt to distinguish these cases by stating that the facts of those cases more clearly established a sham marriage: "The common theme in all of the cases cited by the Respondents is that a clear admission of guilt was made by at least

12

one of the parties to the original visa petition that was determined to be fraudulent. No such smoking gun exists in the Mullajs' case." (Resp. Br. at 11.) But, as Respondents argue, there is no reason why the particular facts of these cases should impact the legal conclusion that was reached by the courts when interpreting the language of the regulations. The court is persuaded by the reasoning expressed in *Ghaly*, *Ogbolumani*, *Opoku-Agyeman,* reasoning which is further supported by the unpublished BIA decisions and, most importantly, consistent with the unambiguous language of the statute.

A summary of the evidence is sufficient to satisfy the requirements of 8 C.F.R. § 103.2(b)(8)(iv) & (16). A summary was provided. Respondents have fulfilled their obligations, and no violation of the APA or Petitioners' due process rights has been stated in the Amended Complaint. Dismissal will therefore be granted.

## IV. CONCLUSION

IT IS ORDERED that Respndents' motion to dismiss [Dkt. # 20] is GRANTED, and Petitioners' second motion for preliminary injunction [Dkt. # 15] is TERMINATED AS MOOT.

       s/Robert H. Cleland              
       ROBERT H. CLELAND
       UNITED STATES DISTRICT JUDGE

Dated: May 31, 2013

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, May 31, 2013, by electronic and/or ordinary mail.

       s/Lisa Wagner                    
       Case Manager and Deputy Clerk
       (313) 234-5522